**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI ST. JOSEPH DIVISION**

| | | |
|---|---|---|
| MEGAN MARIE SWOPE,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | ) | Case No. 5:25-cv-06121-RK |

**ORDER**

Before the Court is Plaintiff Megan Marie Swope's appeal brought under 42 U.S.C. § 405(g) seeking review of the Commissioner of the Social Security Administration's denial of disability insurance benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). After careful consideration and for the reasons explained below, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

**Standard of Review**

The Court's review of the ALJ's decision denying Plaintiff's protective applications for social security benefits is limited to whether the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). The Court "will affirm if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025) (internal quotation marks omitted).

An ALJ's "failure to comply with [Social Security Act] regulations . . . is [reversible] legal error." *Lucus v. Sa3ul*, 960 F.3d 1066, 1069 (8th Cir. 2020). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). To determine whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (internal quotation marks omitted). "If the ALJ's decision is supported by substantial evidence,

[the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). On judicial review of the ALJ's decision, the Court does not "re-weigh the evidence presented to the ALJ," *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003)), and must "defer heavily to the findings and conclusions of the [ALJ]," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

**The Five Step Sequential Analysis for Disability Benefits**

To determine whether a claimant is entitled to benefits under the Social Security Act, the ALJ utilizes a familiar five-step analysis found at 20 C.F.R. §§ 404.1520(a) & 416.920(a), as follows:

At Step One the ALJ considers whether the claimant is engaged in substantial gainful work activity. If not, the ALJ moves to Steps Two and Three to consider whether the claimant has a severe medically determinable physical or mental impairment, or a combination thereof (Step Two), and whether any such impairments meet or are medically equivalent to a Listed Impairment, located at 20 CFR Pt. 404, Subpt. P, App. 1 (Step Three). If the ALJ finds that a claimant's impairments, individually or in combination, meet or medically equal a Listed Impairment, the claimant is entitled to disability benefits. Otherwise, the ALJ moves to Step Four of the analysis to assess and consider the claimant's residual functional capacity ("RFC")[1] and to determine whether the claimant can still do any past relevant work considering the claimant's RFC as assessed by the ALJ. In doing so, the ALJ is required to consider the persuasiveness of medical opinions and prior administrative medical findings. *See* 20 C.F.R. §§ 404.1520c & 416.920c. If the ALJ finds that the claimant can perform past relevant work given the ALJ's RFC determination, the claimant is not entitled to benefits. However, if the claimant is unable to perform past relevant work given their assessed RFC, the ALJ finally considers at Step Five whether the claimant can do other work that exists in significant numbers in the national economy considering the claimant's

[1] A claimant's RFC "is the most [the claimant] can do" despite any "physical and mental limitations that affect what [the claimant] can do in a work setting" caused by a claimant's impairment(s) and related symptoms. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The ALJ's RFC assessment must be based on "all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (internal quotation marks omitted). Although it is a medical question and must be based on some medical evidence, "it is ultimately an administrative determination" for the ALJ. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

RFC, alongside their age, education, and work experience, and the corresponding testimony of a vocational expert. If the ALJ determines that the claimant cannot do so, the claimant is entitled to disability benefits.

**Discussion**

By way of overview, the ALJ found that Plaintiff has the following severe impairments: multiple sclerosis, optic neuritis, adjustment disorder with mixed anxiety and depression, and mild neurocognitive disorder. The ALJ also determined that Plaintiff has the following non-severe impairments: unspecified optic atrophy and restless leg syndrome. The ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the Listed Impairments. Accordingly, the ALJ next considered Plaintiff's residual functional capacity or RFC. The ALJ found that despite her limitations, Plaintiff retained the RFC to perform sedentary work with the following limitations. Plaintiff can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She can stand and/or walk for two hours in an eight-hour workday and can sit for six hours in an eight-hour workday. Plaintiff can occasionally kneel, crawl, and climb ramps and stairs; frequently balance, stop, and crouch; and can never climb ladders, ropes, or scaffolds. She can have occasional exposure to extreme cold and extreme heat but should not work with vibration or around vibrating tools or hazards such as unprotected heights and uncovered moving machinery. Plaintiff can understand, remember, and carry out simple instructions and make commensurate work-related decisions, and can sustain concentration, persistence, and pace at the same level (i.e. a "simple level"). Plaintiff can relate acceptably to others at a basic level with occasional interactions with coworkers, supervisors, and the general public. Plaintiff can adapt to normal changes in a basic routine. Based on this RFC assessment, the ALJ found that Plaintiff was not able to perform past relevant work of a nurse assistant or home attendant. However, considering Plaintiff's RFC and her age, education, and work experience, in conjunction with relevant testimony by a vocational expert, the ALJ found that Plaintiff could perform other work, specifically as a final assembler, printed circuit board screener, and lens inserter.

**Points on Appeal**

Plaintiff asserts three points on appeal. First, in Points One and Two, Plaintiff challenges the ALJ's RFC assessment, specifically (1) whether the ALJ accounted for limitations due to the severe impairment of optic neuritis, and (2) whether the ALJ properly evaluated the opinions of

the state agency psychological consultants. Next, in Point Three, Plaintiff challenges the ALJ's finding at Step Five, specifically whether the vocational expert's testimony is substantial evidence that supports the ALJ's finding that she can perform other jobs that exist in significant numbers within the national economy. The Court addresses each point in turn, below.

**Point One: Whether the ALJ Properly Accounted for Plaintiff's Vision Limitations in the RFC Assessment at Step Four**

First, Plaintiff argues on appeal that despite finding Plaintiff's optic neuritis to be a severe impairment, the ALJ did not include any corresponding limitation in the RFC assessment.

As noted above, a claimant's RFC "is the most [the claimant] can do" despite any "physical and mental limitations that affect what [the claimant] can do in a work setting" caused by an claimant's impairment(s) and related symptoms. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). The ALJ "must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (internal quotation marks omitted). Although it is a medical question and must be based on some medical evidence, the RFC "is ultimately an administrative determination" for the ALJ to make. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). In assessing a claimant's RFC, the ALJ must consider the "total limiting effects" of a claimant's medically determinable impairments and related symptoms, considering both medical and nonmedical evidence. 20 C.F.R. §§ 404.1545(e) & 416.945(e).

In considering a claimant's RFC, an ALJ "may discount subjective complaints . . . if inconsistencies are apparent in the evidence as a whole," although "an ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Koch v. Kijakazi*, 4 F.4th 656, 664 (8th Cir. 2021) (internal quotation marks omitted); *see Julian v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) ("An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony."). The Court "normally defer[s] to an ALJ's credibility determination," so long as the ALJ has properly considered factors including medical evidence; a claimant's work history and their daily activities; the duration, frequency, and intensity of pain; or the dosage, effectiveness, and side effects of medication, among other factors. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (internal quotation marks omitted). For purposes of judicial review, an "ALJ's brevity

is not reversible error," rather the "ALJ's reasoning need only be clear enough to allow for appropriate judicial review." *Id.* (internal quotation marks omitted).

To the extent Plaintiff's argument suggests that a corresponding functional limitation in the RFC related to a vision limitation as a result of optic neuritis is required because the ALJ found that her optic neuritis is a severe impairment at Step Two, the Court disagrees. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (recognizing that "the different steps serve distinct purposes" and there is no error if the findings at Steps Two/Three and Step Four "can be harmonized"). The appropriate question is whether the ALJ's RFC assessment in the relevant respect is supported by substantial evidence. The Court finds that it is.

Plaintiff was diagnosed with multiple sclerosis ("MS") with optic neuritis in 2007. (*See* Tr. at 426, 497.) Accompanying symptoms can include headaches, temporary loss of vision, and double vision. (Tr. 511.) Until late 2017, Plaintiff generally reported stability of MS-related symptoms after starting a medication, Gilenya. (Tr. at 388.) At her regular MS follow-up appointments in January and March 2018, Plaintiff reported "several flareups" of her MS-related symptoms after having stopped Gilenya in September 2017 as she was trying to become pregnant. (Tr. at 384, 382, 388.) She reported leg numbness, facial twitches, and more blurry vision. Physical examinations at these appointments showed intact visual fields with normal pupil reactivity and presentation. She requested to restart Gilenya in March 2018. (Tr. at 382.) After restarting Gilenya, at subsequent regular MS follow-up appointments in June and December 2018, Plaintiff reported doing well, denied headaches or dizziness, and did not report exacerbated vision symptoms. (Tr. at 373-74, 379-80, 497-98, 549-50.) In June 2018, Plaintiff reported that her double vision had resolved although she "still has a small amount whenever she looks to the right [or] uses her computer for a prolonged time." (Tr. at 373.) Plaintiff did not report another MS exacerbation like the one after having stopped Gilenya earlier, but instead in March 2023 reported that her symptoms were stable and denied any recent visual problems including blurred or double vision. (Tr. at 497.)

In October 2023, Plaintiff reported peripheral-double-vision at physical therapy, (Tr. at 599), although as she testified at the administrative hearing, she had then-recently been prescribed "special glasses" by her neuro-ophthalmologist to help with the peripheral double vision. (Tr. at 50; *see* Tr. at 324 (noting November 2023 prescription for prism glasses).) Plaintiff otherwise

testified that she loses vision in at least one eye if she has a MS-relapse, which she testified occurs every two to three years. (Tr. at 49, 58.)

Upon review of the whole record, the Court is persuaded that the ALJ properly and fully considered Plaintiff's optic neuritis in assessing her RFC and fairly concluded—well within the permissible zone of choice—that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her conditions—most notably her optic neuritis—were inconsistent with the record. (Tr. at 26-27.) The ALJ's RFC assessment in this regard is supported by substantial evidence.

Point One is accordingly denied.

**Point Two: Whether the ALJ Properly Considered the Expert Opinion Evidence of the State Agency Psychological Consultants**

Next, Plaintiff argues in Point Two that the ALJ failed to properly evaluate the opinion evidence, specifically the prior administrative medical findings of the state agency psychologists.

At the state agency review level of Plaintiff's application for social security benefits, the state agency psychological consultants—Dr. Robert Cottone, PhD (on initial review) and Dr. Charles W. Watson, PsyD (on reconsideration)—found that Plaintiff was moderately limited in her ability to understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace. (Tr. at 83, 95.) Dr. Cottone found, *inter alia*, that Plaintiff had some "problems with concentration and processing speed" and appeared "likely to be less efficient in completing tasks with some possible need for redirection." (Tr. at 84.) Dr. Cottone also remarked that while he did not find "significant concerns . . . about her capacity to understand instructions, . . . she may have some problems remembering instructions for tasks initially." (*Id.*) Dr. Cottone opined that Plaintiff "can likely remember tasks with repetition and practice" and at most would need "some degree of increased support and supervision in work settings." (*Id.*) Dr. Cottone opined that Plaintiff "can do simple work-relevant tasks" and can "understand, remember, and carry out simple instructions" with "commensurate work-related decisions." (Tr. at 88 & 89.) He further opined that Plaintiff "can sustain concentration, persistence, and pace on tasks at that level." (Tr. at 89.) On reconsideration, Dr. Watson adopted the same mental functional limitation opinions. (Tr. at 101.)

The ALJ found the state agency psychological consultants' opinions persuasive, noting that "they supported their findings with detailed explanations citing to objective evidence" and that "their findings are largely consistent with the . . . medical records, treatment history, and

[Plaintiff's] activities of daily living." (Tr. at 28.) Consistent with these expert opinions, the ALJ found that Plaintiff retained the RFC to sustain concentration, persistence, and pace "on a simple level" or as to simple tasks. (Tr. at 28.) The Court discerns no conflict between the RFC as assessed by the ALJ and the expert opinions of the state agency psychological consultants which the ALJ found persuasive and adopted in his own RFC assessment. The RFC assessment that Plaintiff can sustain concentration, persistence, and pace "on a simple level" (which mirrors the state agency psychological consultants' opinions) as work requiring only simple instructions and the need to make simple work-related decisions adequately captures the deficiencies identified in Plaintiff's concentration, persistence, or pace. *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001).

Point Two is accordingly denied.

**Point Three: Whether the ALJ's Finding at Step Five is Supported by Substantial Evidence**

Finally, in her third point on appeal, Plaintiff argues that the ALJ's finding at Step Five that she can perform several jobs that exist in significant numbers in the national economy is not supported by substantial evidence. At the hearing before the ALJ, the vocational expert testified that a hypothetical person with the same RFC ultimately assessed as to Plaintiff could perform the following jobs that exist in significant numbers in the national economy: Final Assembler, DOT[2] 713.687-018 (17,000 jobs); Printed Circuit Board Screener, DOT 726.684-110 (13,000 jobs); and Lens Inserter, DOT 713.687-026 (13,000 jobs). (Tr. at 76-77.) On cross-examination, Plaintiff's counsel asked the vocational expert to identify the "source for [her] job number data"; the vocational expert identified the source of job number data as "from the Bureau of Labor Statistics." (Tr. at 78.) Counsel asked no further questions regarding the vocational expert's testimony as to job numbers, including her methodology using the data she identified.

Following the administrative hearing but before the ALJ issued his written decision, Plaintiff's counsel submitted to the ALJ supplementary materials to rebut the testimony of the vocational expert. Plaintiff submitted, *inter alia*, a SkillTRAN report, including figures for an "Estimated DOT Employment Number per DOT occupation (SkillTRAN Industry Context Method)" for each of the three occupations identified above. (*See* Tr. at 338-46.) The SkillTRAN reports Plaintiff submitted to the ALJ include a much lower (and even de minimis) estimate of job

[2] "DOT" refers to the Dictionary of Occupational Titles reference material previously published by the United States Department of Labor.

numbers existing within the national economy for the three jobs identified by the vocational expert at the hearing. Plaintiff argued that the vocational expert's methodology was unreliable, primarily relying on this data and counsel's analysis and extrapolation from the data in the SkillTRAN report.

In the written decision, the ALJ concluded that the vocational expert was qualified and found no reason to disregard her testimony. (Tr. at 31.) The ALJ reasoned that Plaintiff counsel had opportunity at the hearing to cross-examination the vocational expert and to inquire into the methodology further but did not do so. (*Id.*) The ALJ pointed to the vocational expert's general testimony otherwise that she derived the numbers from Bureau of Labor Statistics, in response to the single cross-examination question by counsel on the issue at the administrative hearing. (*See* Tr. at 78.) The ALJ noted that the vocational expert's qualifications as a vocational expert were unimpeached at the hearing and that Plaintiff counsel raised no objection to her qualifications.

The Court generally agrees with the Commissioner that an expert's opinion usually "will qualify as more than a mere scintilla of evidence supporting the ALJ's conclusion," which is to say that an expert's opinion generally constitutes substantial evidence at Step Five of the disability benefits analysis framework. *Biestek v. Berryhill*, 587 U.S. 97, 107 (2019) (internal quotation marks omitted). The ultimate question is always whether "a reasonable mind could accept the expert's testimony." *Id.* In *Biestek*, the Supreme Court noted—as the Commissioner emphasizes here—that "even without significant testing," such as cross-examination concerning an expert's sources and methods from which the ultimate conclusion was derived, "a factfinder may conclude that testimony has sufficient indicia of reliability . . . ." *Id.* at 107. "The inquiry . . . in determining the substantiality of evidence, is case-by-case." *Id.* at 108 (rejecting a categorical rule that a vocational expert's refusal to provide underlying data about job availability requires that the expert testimony be found insufficient as substantial evidence at Step Five of the disability benefits analysis).

Here, the Commissioner argues that (1) Plaintiff's counsel did not ask more questions at the hearing to challenge the vocational expert's underlying methodology or source(s), and (2) the post-hearing data submitted by Plaintiff's counsel "included job incidence numbers from a different source not identified by the vocational expert . . . ." (Doc. 12 at 10-11.) The Commissioner suggests that the ALJ, on the administrative record before him, simply "found the vocational expert's testimony more persuasive than Plaintiff's contrary evidence." (*Id.* at 11.)

Although it is a somewhat close call, the Court is mindful of the deferential standard of review applicable here.

The ALJ did not ignore Plaintiff's "rebuttal evidence." (*See* Tr. at 31.) Nor did the ALJ ignore Plaintiff's challenge to the "vocational expert's methodology in determining job incidence data." (*Id.*) The ALJ weighed the vocational expert's testimony in light of her qualifications and expertise (which went unchallenged and unquestioned at the hearing) against the rebuttal evidence Plaintiff presented. To be sure, the vocational expert's testimony was admittedly brief but so was Plaintiff counsel's cross-examination. The Court acknowledges that the burden at Step Five is on the Commissioner. *See Crawford v. Colvin*, 809 F.3d 404, 409 (8th Cir. 2015). And the Court further acknowledges that some issues, like a vocational expert's job-incidence testimony, may well occur "in real-time" at the administrative hearing particularly without prior or advance specific knowledge of counsel or anyone else what that testimony might be. Nonetheless, when a vocational expert testifies at an administrative hearing, the weight to be given to their testimony is an issue that is front and center before the ALJ and the claimant.

The "substantial-evidence bar" is a low one that requires "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. As the Supreme Court made clear in *Biestek*, the value or credibility of a vocational expert's testimony is a holistic inquiry which is not susceptible to categorical rules governing judicial review of the ALJ's decision. The vocational expert testified in this case that her data was obtained from the U.S. Bureau of Labor Statistics; she also testified generally that her testimony was consistent with the DOT and Selected Characteristics of Occupations, in addition to her "experience, training, education, and professional observation." (Tr. at 77.) Plaintiff acknowledges that the Bureau of Labor Statistics "is a source of acceptable job number data." (Doc. 7 at 17.) Plaintiff suggests that the problem here is the lack of "transparency and specificity" as to the vocational expert's methodology utilizing the data obtained from the Bureau of Labor Statistics to support her expert testimony about the numbers of jobs that exist in the national economy for the particular jobs identified. (*Id.*)

In determining whether substantial evidence supports an ALJ's decision, the Court looks to the record as a whole and must "consider evidence that both supports and detracts from the [ALJ]'s decision," and asks whether "a reasonable mind might accept the evidence as adequate to support the [ALJ]'s decision." *Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023). Plaintiff cites

no controlling Eighth Circuit case law or other binding authority that requires a vocational expert to specify and explain in great detail the particular methodology supporting their expert testimony estimating a certain number of jobs within the national economy for any particular occupation(s).[3] To the contrary, a vocational expert "is only required to state [her] opinion as to the number of jobs available in the national economy to a person with the applicant's residual functional capacity, age, work experience, and education." *Whitehouse v. Sullivan*, 949 F.2d 1005, 1007 (8th Cir. 1991). Nor does Plaintiff contest that the SkillTRAN reports—while relying to some extent on some Bureau of Labor Statistics data—utilize a specific methodology to translate that data into job-number estimates. "[T]he threshold for . . . evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. In this particular case and on this record, although it is a close call, the Court is persuaded that the ALJ, notwithstanding Plaintiff's rebuttal evidence, properly evaluated and relied on the vocational expert's testimony as substantial evidence at Step Five.

Point Three is accordingly denied.

---

[3] In support of her argument seeking remand, Plaintiff refers to a newly effective Social Security Ruling, SSR 24-3p, which explains that a vocational expert should generally explain their sources and methods in support of job-incidence testimony. SSR 24-3p was not effective at the time of the ALJ's decision in this case, however. Instead, SSR 00-4p (which SSR 24-3p replaced) required that an ALJ "ask about any potential conflict" between the vocational expert's testimony "and information provided in the DOT." 2000 WL 1898704, at *4. Because the DOT is not a source of job numbers, however, SSR 00-4p is not implicated in this regard. *See Spader v. O'Malley*, No. 4:22-CV-00718-DGK-SSA, 2024 WL 21793, at *4 (W.D. Mo. Jan. 2, 2024).

Similarly, to the extent Plaintiff suggests that she could not do the jobs identified by the vocational expert consistent with the RFC as assessed by the ALJ (even if they do exist in significant numbers in the national economy), she does not identify any apparent conflict between the vocational expert's testimony and the DOT. Plaintiff cites instead to what appears to be other Bureau of Labor Statistics data sources such as the Occupational Requirements Survey and the Department of Labor's Occupational Information Network ("ONET" or "O*NET"). Under SSR 00-4p, however, there is no requirement for the ALJ to discuss apparent conflicts between vocational expert testimony and a non-DOT source, such as ONET/O*NET. *See Shauntaya M.G. v. Saul*, No. ED CV 20-55-E, 2020 WL 4569602, at * (C.D. Cal. Aug. 7, 2020) ("The ALJ's duty to reconcile conflicts between a vocational expert's testimony and the DOT does not extend to non-DOT sources."); *Rozzelle v. Berryhill*, No. 3:17-cv-00127-RJC, 2018 WL 1187781, at *4 (W.D.N.C. Mar. 7, 2018) (no duty of ALJ to address conflict between vocational expert testimony and ONET) (collecting cases).

## Conclusion

Therefore, after careful consideration and review of the record before the Court and the parties' submissions on appeal, the Court **ORDERS** that the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: September 28, 2026